WESTERN UNION TELEGRAPH COMPANY v. H. C. HAMILTON.

Decided June 4, 1904.

### 1.—Telegraphs—Mental Anguish—Remoteness of Consequences—Notice.

Plaintiff was advised by telegram that his wife was very ill, and that an operation for strangulated hernia would have to be performed, but through negligent mistake in transmission the delivery of the message was delayed so that when plaintiff reached home he was unable to view the remains of his wife because decomposition had set in and the coffin was closed. The wife was a large, fleshy woman, and decomposition had set in rapidly. Held that the mental anguish caused was not a result too remote and speculative to constitute a basis of recovery, and that such results as occurred must be held to have reasonably been within the contemplation of the telegraph company at the time it received the message, though it had no other notice than that given by the telegram.

### 2.—Same.

Telegraph companies, as common carriers of messages and engaged in a business quasi public in character, can not be relieved of the results of negligence because the conditions of the persons affected thereby were unusual, but must be held to know that unusual results often will and do naturally arise and flow from a want of proper care in the transmission and delivery of telegraphic messages.

### 3.—Same—Time of Delivery of Message Not Shown—Charge.

Where the evidence showed that the message was not delivered within a reasonable time, on account of an error in the name occurring in transmission, and was deposited in the postoffice, the fact that it reached the addressee, the time and manner of delivery to him not appearing in the evidence, did not warrant an instruction in defendant's favor upon the theory that prima facie the defendant had shown a compliance with the contract of transmission and it devolved on plaintiff to show definitely when and how the message was received by him, the evidence as to delay in delivery being sufficient to shift the burden of proof to defendant.

### 4.—Same—Charge—Calling Attention to Amount Claimed.

In an action of damages against a telegraph company a charge instructing that the jury, in the event they found for plaintiff, should allow him "such damages as would be sufficient to compensate him for his mental suffering, but in no event to exceed the amount plaintiff has sued for, to wit, $1900," was not erroneous because calling attention in that manner and connection to the amount claimed.

### 5.—Same—Evidence of Mental Suffering.

The admission of testimony of a witness to the effect that he saw plaintiff on the train on his way home after the receipt of the delayed message, and that he seemed very much distressed and depressed, was not reversible error on the ground that defendant was not liable for the sorrow and distress experienced by plaintiff on account of the death of his wife, the evidence showing that plaintiff had then, by a second message, been advised of the death of his wife, and it not appearing but that his distress was largely due to the then improbability of his being able to reach home in time to see the body of his wife before burial.

### 6.—Same—Verdict Not Excessive.

A verdict for $1316 against a telegraph company for mental anguish resulting from delay in the delivery of a message preventing plaintiff from reaching home in time to view the remains of his wife before burial, held not excessive.

Appeal from the District Court of Hardeman. Tried below before Hon. S. P. Huff.

*Huff, Barwise & Huff, N. L. Lindsley,* and *Geo. H. Fearons,* for appellant.

*Fires & Decker,* for appellee.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in appellee's favor for the sum of $1316, as damages resulting to appellee because of appellant's negligence in the failure to deliver the following message: "Quanah, Texas, October 25, 1902.—To H. C. Hamilton, Roswell, New Mexico: Come home at once. Your wife is very ill. Will have to operate for strangulated hernia. Care H. T. Benton. (Signed) J. T. Horton." The evidence is sufficient to support the jury's verdict to the effect that appellant was guilty of the alleged negligence in failure to deliver this telegram with reasonable expedition.

Evidence in behalf of appellant tended to show that, as delivered in Roswell, the letter "H" in H. T. Benton's name was received by the operator as "K." The operator and delivering agent testified that they knew no one in Roswell by the name of H. C. Hamilton; that they knew a Henry Benton, but knew of no K. T. Benton; that due effort had been made to find both Hamilton and K. T. Benton, but being unable to find either, the telegram was mailed as addressed for rural mail delivery. The transmitting operator at Quanah testified that the telegram was transmitted care "H." T. Benton, as addressed, and not K. T. Benton; that the telegraphic characters necessary in indicating the letters "K" and "H" are entirely dissimilar, and that there is no similarity between the two letters in sound on the keys. The receiving operator also testified that if the operator sending the message had sent it "H" a careful operator should have received it "H"; that the letter "H" and the letter "K" are radically different in character, and there should have been no mistake—thus tending to exclude the theory advanced by appellant that it was without negligence in the transmission of the telegram or in its receipt at Roswell. H. T. Benton was a well-known keeper of a boarding-house in Roswell. Appellee, who was a brother-in-law of H. T. Benton, was boarding with him, and had the telegram been delivered promptly, as might have been done on the day of its transmission, appellee could and would have arrived in Quanah in time to have viewed the remains of his wife before her burial. Appellee testified, however, that some time after the noon hour on the next day, October 26th, Benton, who in manner and at time not shown had received the telegram, delivered it to him; that he took the first train out of Roswell in the direction of Quanah, arriving at the latter place at about 10 o'clock on October 29, 1902, at which time appellee was advised by those in charge of his wife's remains that the body was so far advanced in decomposition that he could not see her. The coffin accordingly was not opened and the body was buried the same day. It further appears that the operation upon appellee's wife was about 11 o'clock p. m on October 25th, and that she died at 3:30 a. m. on the following morning. Mrs. Hamilton was a very large lady, weighing something like 300 pounds, and appellant offered evidence tending to show that decomposition began very soon after, if not before, her death, and that because of the size of her body there was greater difficulty in so embalming the body as to maintain it in proper condition to be viewed by appellee upon his arrival.

By exception to the petition, and by assignment attacking the sufficiency of the evidence to sustain the verdict, appellant insists that the mental anguish, which the proof shows appellee suffered, which resulted "from his inability to view the remains of his dead wife on account of the decomposition of her body, is not such an injury as the law would undertake to allow compensation for," and that such result is too "remote, contingent and speculative to constitute the basis of any legal recovery; that such damages can not be said to be such as are reasonably within the contemplation of the telegraph company at the time it receives the message," it appearing that appellant had no other notice than that given by the telegram.

We think the assignments involving these questions should be overruled. The message indicates a serious condition of appellee's wife, and the results, as stated, of appellant's negligence in the case under consideration we think such as were fairly and reasonably to have been anticipated. As said in McAllen v. Telegraph Co., 70 Texas, 243: "In cases of tort the rule is, the wrongdoer shall be answerable for all the injurious consequences of his tortious acts, which, according to the usual course of events and general experience, were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." See, also, W. U. Tel. Co. v. Lynn, 87 Texas, 7.

Nor do we think appellant relieved, as contended, by its want of actual notice of the fact that appellee's wife was large in person, and that decomposition was rapid. Where there was some evidence to the effect that successful embalmment is more difficult in the case of large bodies, yet there is nothing in the evidence to indicate that in the instance before us approved methods were not used, or that difficulties other than such as naturally arise had been met with in the process. Appellant was engaged in the business of transmitting messages of serious import for the public, a duty somewhat analogous to that of a common carrier. In the case of common carriers the contention has been several times urged, as here, that the wrongdoer was not liable for results arising from some peculiar condition of the individual involved of which the carrier had no actual notice. But we have uniformly ruled that a common carrier can not be relieved of the results of negligence because the condition of the person affected thereby was unusual. Carriers of passengers exercise their business "in the light of an imputed, if not actual, knowledge that the aged and the infirm and those in delicate condition may and do constantly travel on the passenger trains of the country." See Pecos & N. T. Ry. Co. v. Williams, 34 Texas Civ. App., —, 78 S. W. Rep., 5, and authorities therein cited. We think the principle so applied in the case of a common carrier should also apply to one engaged in the business of appellant. Its business is quasi public in character. It should be held to know that the young, the old, the large, the small, and the infirm may be, as they often are, involved in the subject matter of messages transmitted, and that unusual results often will and do natur-

ally arise and flow from a want of proper care in their transmission and delivery.

Complaint is also made of the court's refusal to give the following special charge: "The proof in this case shows without contradiction that the message in controversy was delivered to be sent from Quanah, Texas, to Roswell, N. M., to H. C. Hamilton, in care of H. T. Benton. The proof further shows without contradiction that the message in controversy was delivered to H. C. Hamilton by H. T. Benton, and there was no testimony in this case showing or tending to show when H. T. Benton came into possession of the message. You are, therefore instructed to return a verdict for the defendant." While the facts are as stated in this special charge, we think it was properly refused. Appellant's contention is in effect that a delivery of the telegram to Benton constituted "full performance of the obligation of the telegraph company," and that under the facts stated "the burden of proof was fixed upon appellee to show affirmatively that the message was not delivered to H. T. Benton with reasonable promptness and dispatch." We, however, are unable to agree with this contention. Appellant's obligation was not only to deliver the telegram but also to deliver it within a reasonable time. It is undisputed that it was not delivered to Hamilton or Benton in the first instance. On the contrary it was deposited in the postoffice with incorrect address and for delivery at some point in the rural district not shown. It does not appear how or when H. T. Benton in fact received it, and we think the facts show at least prima facie negligence on appellant's part in the delivery of the telegram, and the burden rested upon appellant under the circumstances to show if such was the fact that, notwithstanding its improper deposit in the postoffice, the telegram had reached H. T. Benton within such time as to have enabled appellee to have taken the earliest train out of Roswell after its receipt by appellant's operator at that place.

Vigorous complaint is also made of the court's charge wherein the jury were instructed that in the event they found for appellee they would allow him "such damages as would be sufficient to compensate him for his mental suffering, but in no event to exceed the amount plaintiff has sued for, to wit, $1900." While a reference in such connection to the amount claimed by plaintiff in his petition has been frequently deprecated, no case has been cited in which a judgment has been reversed for this cause where, as here, the court gave the proper rule to guide the jury in estimating the damages. The charge here, in effect, limited the jury in the assessment of damages to such sum as was sufficient to "compensate" appellee for his mental suffering, and we can not think it probable that a jury of the qualifications required under our law would in the estimation of damages lose sight of the rule by which they were instructed to be guided, and be influenced by a casual reference by the court in his charge to the amount claimed by the plaintiff. The amount claimed was placed before the jury when the plaintiff read his petition, and we are unable to see how the court's reference thereto could preju-

dice appellant. Heiligmann v. Rose, 81 Texas, 224; Brunswick v. White, 70 Texas, 512; Texas & P. Ry. Co. v. Huffman, 83 Texas, 290.

We find no error in the court's modification of appellant's special charge number 8, which was given to the jury.

The witness Kendall was permitted over appellant's objection to testify that he noticed appellee at Roswell and on the train to Amarillo, and that he seemed very much distressed and depressed. It must be conceded that appellant is not liable for appellee's distress occasioned by the fact of the death of his wife, for this occurred before it was possible for appellee to have arrived at Quanah after the delivery of the telegram in question for transmission. But can it be with certainty said that there is no evidence tending to show that appellee at the time he started from Roswell, and on the way, had reason to anticipate the decomposed condition of his wife, and to know that he would be unable to view her remains on his arrival at home? On the same day the telegram in question was delivered appellee received a second informing him of the death of his wife. He knew the time necessary to make the journey and of the long time intervening between his wife's death and of his arrival at Quanah, and he may reasonably have apprehended the very condition with which he was ultimately confronted. But if it be conceded that the testimony was objectionable, it further appears that after Kendall had testified and during the cross-examination of another witness, some fifteen or twenty minutes after the objectionable testimony had been delivered, the court, of its own motion, stated that he believed that he had committed error in admitting the testimony of the witness Kendall, and stated that he would exclude all such testimony, and so instructed the jury. We therefore hardly feel prepared to hold that this incident of the trial is sufficient to require a reversal of the judgment. There is nothing in the record indicating that it was prejudicial to appellant, unless, perhaps, the size of the verdict. The verdict seems large, but we have been unable to declare it to be excessive as urged, and we accordingly overrule the assignment relating to this matter.

Other assignments have been carefully examined but we find nothing in them presenting reversible error, or that is profitable to discuss. They are accordingly all overruled; and believing that the evidence established the material allegations of appellee's petition, and feeling unable to say that the verdict is excessive, the judgment is affirmed.

*Affirmed.*

Writ of error refused.