Western Union Telegraph Company v. H. F. Gilliland.

Decided May 14, 1910.

**1.—Telegram—Negligent Delay—Right of Action—Amendment—No Surprise.**

A telegram addressed to a married woman was worded as follows: "Come at once. Your father very sick." Held, it was evident from the face of the telegram that it was sent for the benefit of the wife, and the husband could therefore maintain an action against the telegraph company for negligence in delivering the same whereby the wife suffered mental anguish, independent of the question whether or not she had previously requested the sender of the message to send the same. Hence an amended petition filed on the day of trial alleging for the first time that said telegram was sent for the benefit of the wife, and alleging also the date and place of the burial of her father, could not have been such cause of surprise as would entitle defendant company to a postponement of the trial.

**2.—Railroads—Schedules—Evidence.**

Testimony of a witness as to his knowledge of the schedule of the trains on a certain railroad, considered, and held sufficient to qualify the witness to testify as to the times when said trains were due to arrive at and leave certain stations on the road.

**3.—Same—"Railroad Guide."**

A book entitled "Texas & Oklahoma Railway and Hotel Guide," purporting to give the official time tables of various railroads in Texas and Oklahoma was properly admitted in evidence to prove the train schedules of a certain railroad in Texas when supplemented by the testimony of a railroad agent that he was furnished each month by his company with a copy of the book for his guidance, and that the book was recognized by railroad people as being a reliable and authentic guide for time tables of the railroads shown therein, including the road in question.

**4.—Telegraph Company—Duty—Charge.**

In a suit against a telegraph company for negligent delay in delivering a message, the court charged the jury as follows: "Any one engaged in the operation of a telegraph line is charged with the duty of delivering telegraph messages according to the contract with reasonable expedience and to use ordinary care, that is, such care as an ordinarily prudent person would have used under the same or like circumstances, and to see that said messages are delivered with promptness, and the failure to use such ordinary care on the part of the carrier of messages for hire, is negligence," and in other portions of the charge "reasonable diligence and care" to deliver the message was made the measure of defendant's duty. Held, not subject to the objection that it imposed a higher degree of care than the law requires.

**5.—Same—Accessibility of Addressee—Charge.**

The plaintiff alleged that the defendant telegraph company was negligent in failing to deliver a telegram promptly, and that but for said negligence the addressee would have gone to the place where her father was sick and have been with him before his death and have attended his funeral; the court charged the jury that they must find these facts before they could render a verdict for the plaintiff. Held, a verdict for the plaintiff necessarily included a finding that the addressee was at her home and the message could have been delivered to her by defendant, and therefore the failure of the court expressly to require the jury to find that the addressee was at her home and that the message could have been delivered was immaterial.

**6.—Charge—Construction.**

The court charged the jury as follows: "You will not allow your verdict to be influenced by the ability of either the plaintiff or the defendant to pay the judgment or costs of suit, but you are expressly limited to the actual damages, if any, actually sustained by plaintiff's wife by reason of the facts alleged in his petition, and none other." Held, in effect a charge on the measure of damages, and not subject to the objection, when read in connection with the entire charge, that it assumed that the judgment would be for the plaintiff.

Appeal from the District Court of Haskell County. Tried below befor Hon. C. C. Higgins.

*J. H. Barwise, Jr.; Chas. C. Huff, L. H. Mathis* and *N. L. Lindsley,* for appellant.

*H. G. McConnell* and *Gordon B. McGuire,* for appellee.

DUNKLIN, ASSOCIATE JUSTICE.—The Western Union Telegraph

Company has appealed from a judgment in favor of H. F. Gilliland for damages occasioned by appellant's negligent failure to deliver a telegram to plaintiff's wife, reading as follows: "2/21/08.    To Mrs. H. F. Gilliland, Cleburne, Texas.    Come at once.    Your father very sick.    Answer.    J. F. Gilliland."    The telegram was sent from the town of Carney, where defendant maintained an office, and Mr. Yarborough, Mrs Gilliland's father, resided near that town.    Mrs. Gilliland resided with her husband in Johnson County about six miles from Cleburne, on a rural mail route.    When J. F. Gilliland, the sender of the message, delivered it to defendant's agent at Carney for transmission, he informed the agent that the addressee lived in the country, near Cleburne, and within ten minutes thereafter, gave him the number of rural route on which she lived, together with the number of her mail box.    In addition to payment of the regular fee for transmitting the message to Cleburne, J. F. Gilliland requested appellant's agent to employ a special messenger to carry the telegram to plaintiff's home, which the agent agreed to do upon the guaranty then and there made by the sender to pay the extra expense for the hire of a special messenger.    The telegram was delivered to defendant's agent at Carney, about nine o'clock a. m. February 21, 1908, was received at defendant's office in Cleburne at about 9:45 a. m. on the same day, and was received by the addressee through the mail February 28, 1908.    Mrs. Gilliland's father died February 22, 1908, at about five o'clock p. m. and was buried February 24, 1908, at about six o'clock p. m.    The damages claimed in plaintiff's petition were for mental suffering occasioned by reason of the failure of his wife to reach her father's bedside before his death, and her failure to attend his burial.

The evidence warranted a finding by the jury, that if the telegram had been delivered at plaintiff's residence with reasonable promptness, his wife would have started immediately for Carney, would have reached her father's home about five hours before his death, and would have attended his burial.

There was no error in overruling appellant's motion for a postponement of the trial.    The basis of the motion was the lack of evidence to meet issues of fact alleged in plaintiff's amended original petition filed on the day of the trial, and which allegations of fact appellant contended were not embraced in plaintiff's original petition, and, therefore, operated as a surprise.    The alleged new issues consisted in allegations of the date and place of Mr. Yarborough's burial and the allegation that, in sending the message, J. F. Gilliland was acting as the agent of the addressee.    It was evident from the face of the telegram, that it was sent for the benefit of the addressee who afterwards accepted it, and her husband could recover for the breach of the contract made with defendant for her benefit, independent of the question whether or not she had previously requested J. F. Gilliland to send the message.    Western Union Tel. Co. v. Beringer, 84 Texas, 39; Western Union Tel. Co. v. Adams, 75 Texas, 536.

The terms of the message were sufficient notice to the defendant that Mrs. Gilliland's father would likely die, and that his daughter would likely desire to attend his burial in the event of his death, and

the fact that he was buried fifteen miles from his home, we think, makes no difference. Western Union Tel. Co. v. Kuykendall, 99 Texas, 323. From the foregoing conclusions, it follows that the court did not err in admitting proof of the place and date of the burial of Mr. Yarborough, and in submitting the mental anguish suffered by plaintiff's wife by reason of her failure to attend her father's burial as an item of damages to be recovered, in the event of a verdict for plain-. tiff.

It is insisted that there was error in permitting plaintiff's witness, J. P. Kinnard, to testify that a train of the Gulf, C. & S. F. Railway Company was due to leave Cleburne en route to Fort Worth, about seven o'clock in the evening of February 21, 1908, and to reach Fort Worth about eight-thirty or eight-forty o'clock on the same evening; the ground of the objection being that the testimony was hearsay. The witness testified that he had traveled on that railway from Temple to Ft. Worth via Cleburne, on February 10th of the same year the telegram was sent; that the train upon which he traveled was a regular through train, scheduled to leave Temple at three-thirty-five p. m., to reach Cleburne at seven o'clock p. m. and Fort Worth at eight-thirty or eight-forty o'clock of the same evening; that he was living at Belton, but his wife was sick in the hospital at Temple, for three weeks from, and after, February 14th; that during those three weeks he went to Temple twice a day on a trolley car, passing by the Santa Fe depot, and knew the schedule of all the Santa Fe trains from Belton to Temple, and knew that the train scheduled to leave Temple at 3:35 p. m. and to reach Cleburne at 7:00 p. m., left Temple exactly on schedule time during that entire period. We think this testimony was sufficient to qualify the witness to give the testimony to which objection was made.

Plaintiff also introduced in evidence a book entitled, the "Texas & Oklahoma Railway and Hotel Guide," issued by private parties in St. Louis and purporting to give the time tables of various railways in Texas and Oklahoma. M. R. Frampton, agent for the Wichita Valley Railway Company at Haskell, Texas, but in no manner a representative of the Gulf, C. & S. F. Railway Company, nor of appellant, testified that each month he was furnished with a copy of the book for his guidance, that it was furnished by the railway company for which he worked, and that the book was "recognized by railroad men and railroad people, as being a reliable and authentic guide, or time table of railroads shown therein." The time tables contained in the book showed that a Gulf, C. & S. F. Railway train was scheduled to leave Cleburne and arrive in Fort Worth at the same hours testified to by the witness Kinnard; that a train on the Texas & Pacific Railway was scheduled to leave Fort Worth at 9:20 o'clock p. m., and to arrive at Sweetwater the following morning at seven o'clock; that a train on the Mexico & Orient Railway was scheduled to leave Sweetwater at 8:15 a. m. and to arrive in Carney at 11:34 a. m. of the same day. These time tables were read in evidence. The book purported to contain "official time tables of all railway lines operating in Texas and Oklahoma," and on page five appeared a certificate purporting to have been originally signed by the general passenger agents of roads

operating in Texas and Oklahoma, including the Texas & Pacific Railway, the Gulf, C. & S. F. Railway and numerous other railways, recommending the book as containing "correct information pertaining to schedules, train service and connections of various lines operating in those states." Appellant objected to the testimony of Frampton and also to the guide book as being hearsay, and inadmissible for that reason.

It is well settled that market reports are admissible to prove market values. Texas & P. Ry. v. Slater, 102 S. W., 156; International & G. N. Ry. v. Dimmitt Co. Pasture Co., 5 Texas Civ. App., 186, (23 S. W., 754). And we perceive no valid reason why the testimony now under discussion should not be held admissible for the same reason that market reports are admissible. However, as the facts shown in the time tables were proven by other evidence which was uncontroverted, if there was error in the ruling now under discussion, the same was harmless.

Paragraph two of the charge to the jury reads: "Anyone engaged in the operation of a telegraph line is charged with the duty of delivering messages according to contract with reasonable expedience, and to use ordinary care, that is, such care as an ordinarily prudent person would have used under the same or like circumstances, and to see that said messages are delivered with promptness, and the failure to use such ordinary care on the part of the carrier of messages for hire, is negligence." And in other portions of the charge "reasonable diligence and care" to deliver the message was made the measure of defendant's duty. Those instructions are criticised as imposing a higher degree of care than the law requires in such cases. It is the duty of a telegraph company receiving a message to exercise ordinary diligence to promptly transmit and deliver it, and we do not think the charge criticised imposes any higher degree of diligence than that, but was substantially to the same effect. Western Union Tel. Co. v. True, 103 S. W., 1180.

Appellant contends that the third paragraph of the court's charge was erroneous, because it did not require the jury to find that Mrs. Gilliland was at her home on February 21st, where the message could have been delivered to her; and because plaintiff did not allege in his pleading that she was at her home on that day. Under the charge, before a verdict could be returned in favor of plaintiff, the jury were required to find that defendant was guilty of negligence in failing to deliver the telegram promptly, and that but for such negligence, Mrs. Gilliland would have gone to Carney and would have been with her father before his death, and would have attended his burial. These facts were alleged in plaintiff's pleadings and a finding for plaintiff, under that instruction, would necessarily include a finding that she was at her home on February 21st. More than that, Mrs. Gilliland testified that she was at her home during the entire days of February 21st and 22nd, and that she would have gone to Carney immediately, upon receipt of the message; and her testimony was not controverted.

Another paragraph of the court's charge reads: "You will not allow your verdict to be influenced by the ability of either the plaintiff or the defendant to pay the judgment or costs of suit, but you are ex-

pressly limited to the amount of actual damages, if any, actually sustained by plaintiff's wife by reason of the facts alleged in his petition, and none other." Complaint is made that in this instruction, the court assumes that there will be a judgment in plaintiff's favor. We construe this as, essentially, a charge on the measure of damages. At all events, when it is read in connection with the entire charge, we do not think the jury could have been misled thereby, to appellant's injury; especially in view of its failure to deliver the telegram by special messenger, as the undisputed evidence shows it contracted to do.

Paragraph eight of the court's charge is also criticised. That was an instruction to find in favor of appellant, if the jury should believe that defendant sent the message out to plaintiff through the mail, and that a person of ordinary prudence would have so delivered it under like circumstances. Appellant contends that by this charge defendant was made an insurer of the transmission and delivery of the message. We are unable to agree with this interpretation; besides, the charge was favorable to defendant and did not authorize a finding in plaintiff's favor. Parks v. San Antonio Traction Co., 100 Texas, 222. Other criticisms of the charge submitted in appellant's brief, but not specifically discussed already, have been carefully considered and found to be without merit. We further find that special instruction No. 2 requested by appellant was given substantially in the court's main charge.

Under all the facts and circumstances shown in the record, we are unable to say that the verdict and judgment in plaintiff's favor for twelve hundred dollars is excessive, as insisted by appellant, in its last two assignments of error. Western Union Tel. Co. v. Cobb, 118 S. W., 717; Western Union Tel. Co. v. Hamilton, 36 Texas Civ. App., 300, (81 S. W., 1052); Western Union Tel. Co. v. Zane, 6 Texas Civ. App., 585, (25 S. W., 722); Western Union Tel. Co. v. Piner, 9 Texas Civ. App., 152, (29 S. W., 66).

The judgment is affirmed.

*Affirmed.*

Writ of error refused.