**FUNDERBURG v. SOUTHWESTERN DRUG CORPORATION.**

No. 14933.

Court of Civil Appeals of Texas. Fort Worth.

April 2, 1948.

Rehearing Denied April 30, 1948.

Moore & Royse, of Elk City, Okl., and Bullington, Humphrey & Humphrey and John Humphrey, all of Wichita Falls, for appellant.

Arthur R. Tipps and Eugene Sherrod, Jr., both of Wichita Falls, for appellee.

SPEER, Justice.

Appellant, O. O. Funderburg, doing business as Nugul Chemical Company, has appealed from an adverse judgment entered upon the jury's verdict responsive to special issues. Appellee, Southwestern Drug Corporation, sued appellant in a District Court of Wichita County to recover $383.47. The District Court of that County had jurisdiction. Vernon's Ann.Civ.St. Art. 1970—166b.

From the record before us, a brief summary of the matters involved may be thus stated: Appellee (plaintiff below) is in the wholesale drug business in Amarillo, Texas. Appellant (defendant below) had been, for about a year prior to trial, engaged in the manufacture of a brand of soap called "Golly Suds." Appellant was endeavoring to introduce to the trade his new and unadvertised commodity. He employed C. E. Byrd as agent to do advertising by distributing free samples to the general public, and to sell his merchandise, more especially to wholesalers, with a view to distributing his soap to retailers through the channels of trade previously inaugurated by wholesale houses. The agent contacted appellee's manager at Amarillo, Texas, on October 18, 1946, and offered to sell to appellee a quantity of soap. Appellee had never dealt with appellant nor any of his agents and knew nothing of the line of merchandise; no previous experience, observation or custom between the parties were shown to have existed. In his efforts to induce appellee to purchase, the agent exhibited to appellee a typewritten document which purported to be one furnished by appellant to his salesmen for the purpose of inducing wholesalers to purchase the goods and retail them through the customary channels and thus introduce appellant's wares to the consuming public. The document so presented by the agent is as follows:

"Sales Agreement
Contract

"I. Agreement:

"This pledge and Contract made by and entered into by The Nugul Chemical Co. of 703 Lee St., Wichita Falls, Texas, and extended to ———, which is a wholesale Drug Firm, whose offices are located at ———, Amarillo, Texas.

"To-Wit:

"Any and all merchandise sold by Nugul Chemical Co. of Wichita Falls, Texas, is hereby guaranteed to the purchaser of said merchandise to these terms and extent: That at any time this purchaser shall elect to discontinue the sale of this merchandise through his regular channels of trade, Nugul Chemical Co. agrees to reimburse purchaser the full purchase price of the merchandise in his possession and shall pay all freight charges on this merchandise From ——— to Wichita Falls, Texas.

"II. This agreement attached to and made a part of any orders given to our authorized representatives.

"Signed: By

_____

"Authorized Representative
"Nugul Chemical Co.
"703 Lee St., Wichita Falls, Texas."

Appellee considered the document and placed an order for a certain quantity of the soap. It would not have placed the order but for the provisions in the above quoted document. Upon consummation of the agreement, the agent Byrd filled out the blank spaces in the instrument, inserting in the first paragraph the name and street address of the appellee, and in the next to the last paragraph inserted the words, "Amarillo, Texas." The agent signed the instrument on the blank space above the printed name of appellant, and acknowledged it before a notary public. This instrument was delivered to appellee. Appellee made an order for goods and delivered it to the agent, who transmitted it by U. S. mail to appellant. The merchandise was shipped to appellee and the invoice price was thereafter paid to appellant. The agent Byrd, appears not to have attached a copy of the

"Sales Agreement Contract" to appellee's order for the merchandise, or at least appellant testified that in so far as he knew he had never seen it.

On January 29, 1947, appellee exercised its option provided in the "Sales Agreement Contract" to return to appellant such of the merchandise as it then had on hand, billing appellant at the invoice price for the goods returned, and asked for a credit memorandum for the items shown, which appears to be the amount sued for herein. Correspondence between the parties thereafter ensued until appellee instituted this suit on June 5, 1947.

The pleadings of the respective parties formed a sufficient basis for their various contentions. Appellee more specifically pleaded that the agent Byrd's execution and delivery of the "Sales Agreement Contract" was within the scope or apparent scope of his authority as such agent, and appellant pleaded the general issue and specially Byrd's agency was a limited or special one and that he was without real or apparent authority to execute and deliver the instrument relied upon by appellee.

At the conclusion of all testimony, counsel for appellant orally announced to the court as follows: "We now renew our motion for a peremptory instruction because the plaintiff has wholly failed to make out a case on apparent or actual authority. The law is well settled on this point. The person dealing with an agent is dealing at his own peril and it is up to him to find out what his authority is. Also you cannot prove the authority of an agent by his own acts."

■■■ There is nothing in the record to indicate what, if any, action the court took on the request. It is obvious, however, that no such instruction was given. The failure of the court to give the requested instruction is the basis of the first point of error relied upon for reversal. The assigned error is overruled. First, because Rule 268, Texas Rules Civil Procedure provides: "A motion for directed verdict shall state the specific grounds therefor." We think the request made for the instructed verdict does not contain grounds sufficiently specific to bring to the attention of the trial court the

necessity of granting the request. Moreover, while the cited rule does not require that the request for a summary instruction be in writing, it is believed that the better practice would require all such motions and requests to be in writing. In Honea v. Coca Cola Bottling Co., Tex.Civ.App., 182 S.W.2d 512, it was held that the spirit of the rule requiring that a motion for a directed verdict should state specific grounds therefor is that the motion should be in writing. In addition to what was said on that subject in the cited case, it is noted that by Rule 273 either party may request in *writing* (emphasis ours) any special issues, definitions or explanatory instruction as he desires to be given to the jury. Second, in any event we think the testimony raises issues of fact for the jury's determination as to whether or not the agent Byrd was acting within the scope or apparent scope of his authority when he made the "Sales Agreement Contract" with appellee.

The jury in response to special issues found that, (1) defendant (appellant) by his actions gave Byrd (the agent) the apparent authority to sign the contract in question; (2) after defendant learned that Byrd had signed the contract in question he failed to notify the plaintiff within a reasonable time thereafter that Byrd did not have authority to sign such contract on behalf of defendant; and (3) defendant ratified the contract made by the agent with plaintiff by failing to notify plaintiff that the agent was without authority to make the agreement in question within a reasonable time after defendant learned that the agreement had been made.

Other points of error relied upon by appellant are 2 and 4, which assert error in the definition of "apparent authority" and in submitting special issue No. 1, inquiring if the agent had apparent authority to execute the instrument in question; points 3 and 6 complain of the court's definition of the word "ratify" and in submitting an issue inquiring if appellant ratified the act of the agent in executing the "Sales Agreement Contract." It is claimed that there was no evidence authorizing the instructions and issues complained of in points 2, 3, 4, and 6. Point 5 complains of the submission of the second special issue above

referred to. The complaint as to this issue is that it leads the jury to believe that the defendant failed to notify plaintiff within a reasonable time that the agent had no authority to sign the contract. Points 7 to 10 assert error in the admission of the testimony by plaintiff's manager that (a) plaintiff relied on the "Sales Agreement Contract"; (b) plaintiff would not have purchased the soap except for the provisions of the instrument; (c) he believed Byrd was the agent of defendant; and (d) he believed Byrd had authority to make the contract.

In view of the nature of these points of error, we think it unnecessary to discuss them separately. We have concluded that no reversible error is shown in this record and we base this conclusion upon principles of law which we shall presently discuss.

Appellant testified that Byrd was employed by him as a sales agent of his products; that Byrd's employment was not in writing and, substantially, that Byrd's authority was just such as appellant gave him orally; that he just told Byrd what he could and could not do; that in so far as he knew, no person other than those connected with his business knew the nature and extent of Byrd's employment. Byrd did not testify in the case; neither party attempted to explain his absence, if indeed, either party needed Byrd's version of the extent of his employment.

The rights of the respective parties here are controlled largely by the laws pertaining to agency. This is a subject upon which the courts have written much, announcing principles of law and finally applying them to particular facts of given cases. It is deemed pertinent to mention some of those general rules and observations made by the courts, considered pertinent to this case.

■■■■ Where agency is proved (admitted in this case) without explanation or showing as to its extent, the agency will be presumed to be general and not special. 2 Tex.Jur., p. 406, sec. 21. It makes little difference in this case whether Byrd was a general or special agent, since appellant said his instructions to Byrd and his limitations were not known outside his own business. "Instructions that are not in fact communicated, and are not intended to be communicated, to the third party dealing with the agent do not qualify the liability of the principal either in the case of general agency or of a particular agency." 2 Tex.Jur., p. 409, sec. 25. "The acts of an agent within the scope of his apparent authority in dealing with innocent third persons bind his principal, although they may be in violation of private instructions received from the principal * * * if the principal puts it in the power of his agent to make contracts or to do acts apparently within his authority which may result in injury to innocent third persons or to the principal, the law imposes the loss upon the latter." 2 Tex. Jur., p. 431, sec. 43. "Any agent, whether general or special, has, by implication, all such powers as are necessary and proper as a means of effectuating the purposes for which the agency was created." 2 Tex. Jur., p. 407, sec. 23. When an agent acts within the apparent scope of his authority, a duty rests upon his principal to give notice of any limitations which affect the rights of parties dealing with the agent. 2 Tex.Jur., p. 408, sec. 24.

There are authorities holding that a traveling salesman, having authority to make a contract of sale, could, within the apparent scope of his agency, "stipulate in a contract of sale, that, if the property sold was unsatisfactory to the purchaser, it could be returned." 2 Tex. Jur., p. 447, sec. 52.

Swisher-Orrison Co. v. W. E. Rogers & Son, Tex.Civ.App., 69 S.W.2d 515, was a case involving an experimental sale and distribution of an unadvertised brand of cigars. The sales agent had the duty to undertake to attract consumers to the new product. The agent contracted with a distributor to the effect that if the cigars proved unmerchantable they could be returned to the seller and the purchaser would receive credit for same and thus be reimbursed for the purchase price of the cigars. It was held that while there was no express authority given the agent to thus contract that the unsalable cigars could be returned, yet the nature of his employment showed that he had such implied au-

thority, as the general sales agent, to do so.

In Eastern Manufacturing Co. v. Brenk, 32 Tex.Civ.App. 97, 73 S.W. 538, 539, a traveling sales agent at the time of making a sale executed a written contract authorizing the return of the merchandise if it was not satisfactory. The principal defended upon the ground that the agent exceeded his authority in making the agreement for return of the goods. Under the facts detailed by the court, it was said in that case, "Having authority to make a contract of sale, it was within the apparent scope of his agency to stipulate in the contract that, if the property sold was unsatisfactory to the purchaser, it could be returned for credit."

We note by the final paragraph of the "agreement" in controversy this is stated: "This agreement attached to and made a part of any orders given to our authorized representatives." When Byrd returned to appellant the appellee's order for merchandise, he evidently did not comply with the last quoted provision of the agreement. He did not send a copy of that instrument along with the order. In this respect the controversy before us is similar to that involved in the case of Patton-Worsham Drug Co. v. Stark, Tex.Civ.App., 89 S.W. 799, 800. That case likewise involved the right of the sales agent acting within the apparent scope of his authority to change the terms of payment for goods ordered. The agent erased or changed the terms in the copy sent to his principal and the controversy arose over the terms contained in the order, a copy of which was retained by the buyer and the changed copy held by the seller. The court reasoned, "A principal vouches for the trustworthiness of his agent, and one dealing with the agent has the right to believe that the terms of a contract made within the apparent scope of his authority, which has to be reported by the agent to his principal for approval, will be reported correctly * * * for, as what one does through an agent, he does through himself, it would be allowing one to take advantage of his own wrong to hold any other way."

Clayton v. Western National Wall Paper Co., Tex.Civ.App., 146 S.W. 695, involved the purchase of wall paper from an agent, giving the purchaser's note in payment therefor, under a promise from the agent that if the wall paper proved unsalable the seller would take it back and credit the note with such of the wall paper as was returned. The seller denied the authority of the agent to make such an agreement and the court held that the agent had the implied authority to agree that his principal would take back unsalable goods theretofore purchased from the principal and would give the buyer credit on the note for them at their invoice values.

Appellant relies largely upon Wichita Frozen Food Lockers, Inc., v. National Cash Register Co., 142 Tex. 109, 176 S.W. 2d 161, by the Supreme Court. To read that case is to distinguish it from the controversy here involved. There, a known sales agent attempted to compromise his principal's debt previously contracted by the purchaser of a cash register by an agreement long after the sale was made and when the note matured, to accept the then second hand cash register in payment of his principal's note. The implied authority of such agent would not be indulged in by the court as disclosed by the opinion.

We have previously pointed out that the court submitted these controverted issues of fact to the jury and that fact finding body resolved all issues against the contentions of appellant. We have carefully read the statement of facts and find that there is evidence of a substantial nature to support the verdict. What we have said discloses that we think the verdict was supported by the evidence and the court's judgment was properly entered thereon. All points of error are overruled, and the judgment of the trial court is hereby affirmed.