HOUSTON PACKING COMPANY,
Appellant,

v.

W. T. SPIVEY, Appellee.

No. 3484.

Court of Civil Appeals of Texas.

Feb. 19, 1960.

Presley E. Werlein, Jr., Bryan; Suhr & Bering, Houston, for appellant.

John O. Hoyt, Humble, for appellee.

COLLINGS, Justice.

W. T. Spivey brought suit against Houston Packing Company, seeking to recover for alleged lost profits arising out of plaintiff's failure to earn profit in raising certain broiler chickens fed defendant's feed. Plaintiff's cause of action was based on a letter and oral statements on the part of one John L. Cook, alleged to be the agent of the defendant, said writing and oral statements being to the effect, that if plaintiff attended to the chickens in a husbandly manner and to the best of his ability, said agent guaranteed plaintiff that he would not lose money on the 3,200 chickens because he used defendant's brand of feed, known as "Sunshine Feeds". Houston Packing Company filed a sworn denial of the allegations in plaintiff's pleadings specifically denying the execution of the writing stating that such writing was not executed by the defendant or under its authority, and that the said John L. Cook had no authority from defendant, express or implied, to guarantee plaintiff profits which plaintiff would have made by the use of other feed; that the account sued upon was unfounded in whole and in part and wholly unjust and untrue.

The trial was before the court without a jury and judgment was rendered in favor of plaintiff for $388.22. Houston Packing Company has appealed.

■ The evidence shows conclusively, or is of probative force sufficient to support an affirmative finding of the following facts. In support of the judgment we must presume such findings to have been made. On February 7, 1956, the appellee, W. T. Spivey, who was in the business of raising broiler chickens, was approached by Mr. John L. Cook as a purported agent of the Houston Packing Company. Cook represented to appellee that the Houston Packing Company was making a feed for chickens which they called "Sunshine Feed"; that this feed was much cheaper than the feed which chicken raisers were accustomed to using and urged appellee to use said feed. Appellee agreed to use the feed and thereafter on the same day, Cook brought to appellee 3,200 broiler type chickens. Cook also had delivered to appellee a quantity of "Sunshine Feed" which was brought to appellee in trucks bearing the name of Houston Packing Company and was contained in packages which bore the name of said Company. In accordance with this arrangement, appellee placed the chickens in one of his chicken houses and began to feed them appellant's feed. When the chickens were about three weeks old appellee discovered they were not developing properly and weighed only about half as much as chickens of the same age which had been fed other feeds. The next time Mr. Cook visited appellee, appellee advised him that he would rather pay for the feed already bought and go back to the use of feed which he had previously used. Mr. Cook told appellee that if he would continue to use "Sunshine Feed", he would guarantee that appellee would do as well as he had been doing with any other feed. Thereafter on February 29, 1956, appellee Spivey received the following letter:

" * * *

Livestock                         Poultry
Feed Ingredients            Meat Scraps
                                   & Tankage
Sunshine - Feeds
Feed Division
Houston Packing Company
3301 Navigation Blvd., P. O. Box 1737
Telephones: PR 2361—PR 2369
Houston 1, Texas

"February 29, 1956

"Mr. W. T. Spivey
Route 2
Humble, Texas

"Dear Mr. Spivey,

"This letter is to confirm the conversation between you and myself on February 28, 1956, at your place, whereby I guaranteed you that you would not lose money on the 3200 chicks in your house being fed on our Feed. Due to any condition of the birds or of the feed, or failure of the birds to grow and make marketable birds in a reasonable length of time—disasters caused by acts of Nature, such as storms, fires, etc., being excepted.

"Whereby you promised to tend to the birds in an husbandly manner to the best of your ability.

"I would like to re-assure you that We are vitally interested in your problems and that we are trying to give you a product that will make money for you as well as us.

"There is no doubt in my mind that we will come out on top and you will enjoy doing business with us.

"Sincerely,

"John L. Cook

"John L. Cook, Sales Manager

CSR.

Sunshine Feeds      Sunshine Feeds
Manufactured By     Manufactured By
   Houston             Houston
   Packing Co.         Packing Co.
Houston, Texas      Houston, Texas.
                            * * *"

The above letter received by appellee was enclosed in an envelope which bore the insignia "Sunshine - Feeds, Feed Division, Houston Packing Company" similar to that on the letterhead.

Thereafter Mr. Cook again came to Spivey's chicken farm and discussed the matter with appellee. Appellee had read the above letter and was confused about whether it was the intention to guarantee that he would just break· even or that he was to make the same profit that he had made off other chickens he had fed with other feeds. Appellee was informed by Mr. Cook, in effect, that it was guaranteed that he would make the same profit he had been making on other chickens fed with other feeds.

The evidence showed that sometime later the chickens began to die and Cook came and carried some of them off; that he carried some to a veterinary and some to A & M College; that he thereafter told appellee what was wrong with the chickens, saying that it was the result of lack of vitamins in the feed, that they were starving to death. The evidence indicates that Mr. Cook continued to furnish feed for appellee to feed said chickens; that he advised appellee they had made a change in the feed; that the chickens thereafter did do better; that the chickens were marketed on April 18, 1956, at the City Poultry & Egg Company and that appellee accompanied the chickens to the market. The evidence shows that at the time of the sale the condition of the chickens was not good; that they were not first class chickens; that they were underweight, weighing about two pounds less per chick than other chickens of the same age fed with other feed and slightly more than half of what they should have weighed. Thereafter Spivey received a statement or bill for $94.78 from appellant Houston Packing Company for feed. The statement was enclosed in an envelope addressed to appellee and the name of Houston Packing Company appeared on both the envelope and the statement. The postmark on the face of the envelope was "Houston, Texas— May 21, 1956".

Mr. Spivey further testified that he cared for the chickens to the best of his ability and in the same manner that he had cared for other chicks he had raised. He testified that he should have made around $14 per 100 birds and substantiated this estimate by comparison with a bunch of 3,400 broiler type chickens similar to the ones here under consideration which he had sold in January of 1956 at the age of ten weeks, the same age at which the chickens under consideration were sold.

■ We overrule appellant's points urging, in effect, that the evidence failed to show any authority on the part of John L. Cook to orally or by writing obligate appellant Houston Packing Company to ,guarantee Spivey a profit on the chickens equivalent to that which he would have made by the use of other feeds.

Appellant did not deny that Cook was its sales agent. Appellant did deny Cook's authority to guarantee that appellee would make a profit. John L. Cook was sales manager for appellant Houston Packing Company. This fact was indicated on appellant's stationery and on the letter received by appellee Spivey. Cook came to appellee's place of business as a salesman for appellant and the continued course of dealings between the parties plainly indicated such agency. Even if Cook's agency had been denied by appellant, the facts and circumstances in evidence clearly showed his agency. In support of the judgment it must be presumed that the court found Cook was a sales agent of appellant.

■ Any agent has, by implication, all powers necessary and proper to accomplish the purpose for which the agency was created. 2 Tex.Jur. 407; 2 C.J.S. Agency § 114, p. 1319; Funderburg v. Southwestern Drug Corporation, Tex.Civ.App., 210 S.W.2d 607. In 2 Tex.Jur.2nd, page 483, it is stated:

"* * * where a principal places an agent in such a situation that a person of ordinary prudence, who is conversant with business usages and the nature of the particular business, would reasonably be led to believe that the agent has authority to perform acts customarily done in a business of that kind, one who deals with the agent will be justified in believing he has such authority."

■ It is held that a sales agent has the implied authority, at the time of a sale, to make reasonable warranties concerning the quality and performance of the product sold. 2 C.J.S. Agency § 114, p. 1325; Fulwiler v. Lawrence, Tex.Civ.App., 7 S. W.2d 636; Swisher-Orrison Co. v. W. E. Rogers & Son, Tex.Civ.App., 69 S.W.2d 515. Cook, as sales agent of Houston Packing Company, was endeavoring to sell its feed to Spivey. For the purpose of making the sale he had the implied authority to guarantee the fitness of the product. He had the authority to guarantee against the risk that appellee, by using the feed, might lose the ordinary and usual profit which a grower might reasonably expect to make by the use of other feeds under similar growing conditions and a like market.

■ We overrule appellant's contention, in effect, that there was no proper proof that Cook wrote the letter dated February 29, 1956. The letter was signed "John L. Cook" and was received through the mail by appellee Spivey. It stated that it was in confirmation of the conversation between Cook and appellee on February 28, 1956, and the evidence showed that such a conversation did take place. Spivey also testified to a subsequent conversation with Cook concerning the letter. The evidence was amply sufficient to show that Cook wrote the letter.

Contrary to appellant's contention, the letter dated February 29, 1956, when considered in connection with the oral agreement between the parties on February 28, 1956, and the subsequent conversation between the parties plainly shows an agreement by Cook, as agent of appellant, to guarantee appellee a profit under the conditions of the agreement.

■ There was ample evidence of probative force to show that Spivey fulfilled his obligation under the contract to tend to the birds in a husbandly manner and to the best of his ability. Appellant's contention that there was no evidence of such fact is overruled.

■ We overrule appellant's point number 3 contending that the court erred in allowing Spivey to introduce in evidence the market report published in the Houston Chronicle, a daily newspaper, dated April 18, 1956, reflecting the market price of chickens on that date. Market reports or quotations contained in newspapers and trade journals are competent to show market price. 17 Tex.Jur. 750, 751; Bullard v. Stewart, 46 Tex.Civ.App. 49, 102 S.W. 174 (Writ Ref.); Carlton v. Adams, Tex. Civ.App., 54 S.W.2d 1073 (Writ Ref.).

■ We also overrule appellant's point number 4 urging, in effect, that it was error to enter judgment for loss of profits because appellee's pleadings and evidence concerning any loss of profits was highly speculative and failed to show that the same condition existed at the time appellee purportedly made a profit. We can not agree with this contention. Spivey's pleadings show that he claimed the loss of profits in connection with marketing the chickens. He proved the loss of profits on the basis of a comparison of the profit made on the chickens under consideration and the profit on a similar type and quantity of chickens fed on a higher priced feed just prior to raising the birds in question. Apparently the only difference in the conditions was the difference in the price and quality of the feed. Appellee's pleadings and evidence showed with a reasonable degree of certainty and exactness the extent

428

of his loss of profits and were not subject to appellant's complaint. 13 Tex.Jur. (Rev.) 220; Richker v. Georgandis, Tex. Civ.App., 323 S.W.2d 90.

■ Appellant complains in his 5th point of the action of the court in permitting Spivey to estimate the amount of his fuel and light bill necessarily expended in raising the chickens in question, and in considering such evidence in determining profits. Appellee testified that the charges for fuel and light for his residence and his chicken house were on the same bill. Under the circumstances, it was not error to permit him to estimate the amount of such expenses chargeable to the operation of his chicken house. The point is overruled.

■ We also overrule appellant's 6th point urging that the court erred in permitting Spivey to testify concerning statements made to him by Cook concerning the results of veterinary tests of the chickens and the feed in question. Cook was the agent of appellant Houston Packing Company. The statements in question which he made to Spivey, including the statement that the chickens were starving for lack of vitamins, were admissible as part of the res gestae. 2 Tex.Jur.(2d) 737.

■ Appellant also urges that the court erred in admitting in evidence a copy of a purported certificate from Houston Public Scale without first accounting for the original of said purported certificate and without first requiring evidence showing that said certificate reflected the weight of the chickens in question. The chickens in question were marketed at City Poultry & Egg Company on April 18, 1956, and were weighed at Houston Public Scale on that date. Appellee served notice on appellant to produce the original certificate which was made to Houston Packing Company and would presumably be in its possession. Article 5696, Vernon's Texas Civil Statutes, provides that such a certificate when so made and properly signed shall be prima facie evidence of such weight. There is no

provision in the statute to the effect that only the first certificate issued by a public scale shall be entitled to be treated as prima facie evidence. There was no evidence from appellant that it marketed other poultry on the same date which went to the City Poultry & Egg Company and was weighed by Houston Public Scale. Appellant's 7th point is overruled.

We have carefully examined all points presented and find no reversible error. The judgment of the trial court is affirmed.