**AMERICAN BANKERS INSURANCE
COMPANY, Appellant,**

v.

**Ada FISH, Appellee.**

No. 7684.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 20, 1967.

Stovall & Stovall, Plainview, for appellant.

J. Farris Fish and Howard Traweek, Matador, John B. Stapleton, Floydada, for appellee.

CHAPMAN, Justice.

This suit was filed by appellee, Mrs. Ada Fish, seeking recovery for benefits under a "Hospital and Surgical Expense" insurance policy based on expenses incident to confinement in St. Joseph's Hospital in Hot Springs, Arkansas, from July 28, 1964, to August 23, 1964. In a trial to the court judgment was rendered for appellee for $461.15 found by the court to be due under the terms of the policy, and for penalty of twelve per cent and attorneys' fees in the amount of $350. Appeal is perfected upon five points of alleged error.

Suit was filed in the County Court of Motley County on March 10, 1966, against American Bankers Insurance Company, successors to the company which issued the policy, First National Life Insurance Company. Answer was filed for the company by a Waco law firm on March 18, 1966. On April 26, 1966, at the direction of Judge Reeves, County Judge of Motley County, Mr. Fish, one of the attorneys for appellee, mailed the then attorneys of record a letter with a copy to Judge Reeves informing them the trial judge had asked him to advise them the styled and numbered case was set in his court on Wednesday, May 11, 1966. No acknowledgement of receipt of the letter is shown in the record but on April 29, 1966, the Waco firm by letter to Mr. Richard F. Stovall of Plainview informed him they had advised Mr. Fish that Mr. Stovall's firm was handling the case on behalf of appellant and requested that he "* * * get together with Mr. Fish concerning the trial setting." That letter shows the Waco firm knew from Mr. Fish's letter that the case was set for trial. The record shows no effort by the Waco firm or Mr. Stovall's firm to contact the court or Mr. Fish concerning a change in the date of trial setting nor was any application or request made for a jury or a jury fee paid until approximately 10:00 o'clock a. m. on the morning the case was set for trial, Wednesday, May 11, 1966. No other case having been set for that day, there was no jury called.

Appellant filed its motion for continuance when the court refused to set the case at a later date and its first two points assert the trial court abused its discretion in refusing to grant appellant's motion for continuance and depriving it of a trial by jury.

In the order overruling the motion for continuance the trial court recited that neither the motion, the evidence, nor the record on file shows diligence on the part of the company to be ready for trial; that no word was received by the company that it would not be ready for trial; that the judge was also ex officio County Superintendent of the county; that by the company's silence it induced the court to arrange its docket, its school matters, and all other county and school administrative business in order that May 11 could be set aside for trial of the case.

In making its record for continuance appellant placed Judge Reeves on the stand. Although his testimony shows he did not have any cases set it showed he was director of Civil Defense of the county, requiring meetings in towns of the area constantly;

that he was representative of the State Department of Welfare, "* * * in which surplus commodities are constantly at demand on my time;" that he took care of the Community Chest activities in relation to indigent cases; that May was the month for school closings for the year, demanding many obligations on his time; and that he had no assurance that he would have a date for a future setting of the case within a reasonable time. He also testified that from general custom it was, his opinion an attorney receiving a notice of a setting would know it meant 10:00 o'clock on the morning of the date their cases are set.

■ We have been cited to no cases nor have we found any in our independent research where the exact fact situations present in the instant case have been passed upon by appellate courts. Under the general rule, the granting or refusing of a continuance is addressed to the sound discretion of the court, Erback v. Donald, 170 S.W. 2d 289 (Tex.Civ.App.-Fort Worth, 1943, writ ref'd w. o. m.); Butcher v. Tinkle, 183 S.W.2d 227 (Tex.Civ.App.-Beaumont, 1944, writ ref'd w. o. m.), subject to review on appeal. Johnson v. Johnson, 296 S.W. 2d 615 (Tex.Civ.App.-Waco, 1956, no writ). But a judgment will not be reversed on account of denial of application for continuance unless abuse of discretion is shown. Johnson v. Johnson, supra; Mitchell v. Mitchell, 233 S.W.2d 187 (Tex.Civ.App.-Amarillo, 1950, no writ); Motor Finance Co. of Texas v. Allen, 252 S.W.2d 1022 (Tex.Civ.App.-Beaumont, 1952, writ ref'd n. r. e.). Under the record before us we believe it would be improper for us to hold the trial court in this case abused its discretion.

■ The formal motion filed by appellant for continuance recites that counsel had insufficient time to prepare a defense and that it needs to take depositions and do other investigative work. Such affirmations are mere conclusions of the affiant. This court has held under such a situation

the trial court did not abuse its discretion in denying a motion for continuance. Sanders v. Kansas City Life Ins. Co., 152 S.W.2d 506 (Tex.Civ.App.-Amarillo, 1941, writ ref'd); Panhandle Broadcasting Company v. Cercy, 363 S.W.2d 792 (Tex.Civ. App.-Amarillo, 1962, no writ).

The motion for continuance does not comply with Rule 252 so as to show what testimony is needed by the depositions the motion states it needs to take, its materiality, that diligence has been used to procure same or that such testimony was not available from some other source than depositions. Under the record before us we feel we are legally bound to hold the trial court did not abuse its discretion, even though under the circumstances shown this writer, had he been trial judge, would have granted the motion, reset the case and called a jury.

■ We also hold the trial court did not abuse its discretion in refusing a jury trial. Appellant wholly failed to comply with Rule 216. The answer to the petition of appellee was filed on March 18, almost two months before the trial. The Waco law firm could have made application for a jury and paid the $3.00 jury fee any time thereafter, and even the Plainview firm had from May 2nd to make the proper demand. Yet, neither firm did the court the courtesy of making a single effort to comply with the rule or request a change in setting. Under such circumstances we do not feel justified in holding the trial court abused its discretion. Continental Fire & Casualty Ins. Corp. v. Surber, 231 S.W.2d 750 (Tex.Civ.App.-Fort Worth, 1950, no writ); Nelson v. Dunigan Tool & Supply Co., 265 S.W.2d 680 (Tex.Civ. App.-Eastland, 1954, no writ).

The next three points assert reversible error in admitting testimony by Dr. Stanley, a practicing physician of Matador for many years, based upon the then current official directory of the American Medical Association giving the list of all medical doctors and medical hospitals in the United

States for the reason it was hearsay; there was no proof of the expenses incident to confinement and treatment incurred within a hospital recognized as such by the American Hospital Association, the American Medical Association or the American Osteopathic Association; and there was no competent evidence that the expenses incurred by appellee were the usual, customary and regular charges of the hospital in question. We shall discuss the points concerning the question of the hospital being a recognized hospital first.

Appellant cites numerous cases for its contention that it was reversible error to permit Dr. Stanley to testify from the official directory of the American Medical Association that St. Joseph's Hospital in Hot Springs, Arkansas, was listed therein as an approved medical hospital. A careful reading of the line of cases cited reveals they are generally instances where the courts have held that doctors may not on direct examination read from or testify to statements in medical books made by other doctors. The Supreme Court of Texas has indicated such testimony should be confined to cross-examination in showing the deficiency in the knowledge of the expert as to the science about which he is testifying, Gulf, C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 115 S.W. 260 (1909), and that books of science are not admissible in evidence to establish the doctrines therein affirmed, except works of the exact sciences. St. Louis, A. & T. Ry. Co. v. Jones, 14 S.W. 309, 310 (Tex.1890). We do not believe those cases are authorities for the errors urged in the points under discussion.

Mrs. Fish testified the hospital was a large, three-story hospital with doctors and nurses treating sick people and that Dr. Washburn placed her in the institution. Plaintiff's Exhibit 3 listing the services rendered clearly shows the hospital to be a church-related medical hospital. Mrs. Fish also testified that after she was " * * * in the hospital for that period of time" they sent her a statement showing a room for two days at $18 a day and twenty-four days at $14 a day. The statement also included expenses for laboratory, X-rays and pharmacy and lists radiologists and pathologists, thus indicating it could only be a medical hospital.

Dr. Stanley, who had himself been operating a hospital for many years, testified the American Medical Association publishes an official directory each ten years listing all medical doctors and medical hospitals in the United States; that the current directory of the association was the one he was relying on and that St. Joseph's Hospital in Hot Springs, Arkansas, showed by the directory to have been established in 1888; that it was a general hospital of 220 beds, 33 bathinettes, was church related, and that Sister Mary Leonardo Burham, a registered nurse, was its administrator.

Over objection of defendant Western Union Telegraph Company, a witness was permitted to testify from an authentic time-table recognized by railroad men as being a guide of schedules as to the time trains leave one town and arrive at another. One of our intermediate appellate courts held the evidence admissible, " * * * for the same reason that market reports are admissible." Western Union Telegraph Co. v. Gilliland, 61 Tex.Civ.App. 185, 130 S.W. 212 (1910, writ ref'd).

Our courts have also held market reports or quotations contained in newspapers and trade journals are competent to show market prices. Texas & P. Ry. Co. v. Donovan, 86 Tex. 378, 25 S.W. 10 (1894); Houston Packing Company v. Spivey, 333 S.W.2d 423 (Tex.Civ.App.-1960, no writ) and cases therein cited; City National Bank in Wichita Falls v. Kiel, 348 S.W.2d 260 (Tex.Civ.App.-Fort Worth, 1961, writ ref'd n. r. e.) and cases therein cited.

We perceive no material distinction in the admissibility of railway time-tables, quotations in newspapers and trade

journals, and information in professional directories. It is true Dr. Stanley testified on cross-examination that even though a hospital was approved in 1956 something could have happened since that date that would make it unapproved in 1963. We believe such testimony would only go to the weight of consideration to be given by the trial court in passing on the admissibility of the testimony when considered in connection with the information in the professional directory. The fact that it was listed in the official directory as a medical hospital, when considered in connection with Mrs. Fish's testimony and the information shown on Exhibit P-3, would, in our opinion, bring it within the requirement of the insurance contract as recognized by the American Medical Association. We, therefore, hold appellant's points three and four are not well taken.

The last point is a "no-evidence" point on the contention of no proof that the expenses incurred were the usual, customary and regular charges made by St. Joseph's Hospital in Hot Springs, Arkansas. The policy of insurance provides:

"The Company will pay only the usual, customary and regular charges of the Hospital for the below schedule of services and materials, and the maximum amounts specified in this Part 1 are the maximum amounts for which the Company shall be liable as the result of any one accident or sickness, with respect to the Insured member hereunder."

Dr. Stanley examined the itemized statement of the services rendered Mrs. Fish by the hospital and then testified they would be reasonable charges. However, the policy itself provides the maximum it will pay for services listed and lists the services.

If it could be said that Dr. Stanley's testimony to the effect that such charges were reasonable satisfies the requirement in the policy of " * * * the usual, customary and regular charges," the maximum for which judgment could have been rendered, considering the charges made and the limitations in the policy, would be as follows:

"Hospital room for 24 days
    at $14.00 per day ............$336.00
"Hospital room for 2 days
    at $15.00 per day ............  30.00
"Physical therapy (no limit
    in policy) ...................  40.10
"X-rays .........................  10.00
"Laboratory .....................   7.00
"Medicines ......................   7.50
                                  _____
                                  $430.60"

This amount is for the reason that the two days for a room at $18 per day would have to be reduced to $15 per day, the maximum allowed under "Schedule A" of the policy. Though the hospital rendered a bill for $91.10 for medicine for Mrs. Fish and $25 for X-rays, the maximum allowed respectively for such items under "Part 1" of the policy is $7.50 and $10.00. No .payment obligations are shown in the policy for mineral baths.

We hold the testimony of Dr. Stanley to the effect that the charges made were reasonable charges and would be reasonable anywhere would satisfy the requirement of "usual, customary and regular charges" under the terms of the policy.

The Supreme Court of Texas has approved a holding by this court that: "The terms of an insurance policy must be interpreted in the light of common sense." Hall v. Mutual Ben. Health & Accident Ass'n, 220 S.W.2d 934 (Tex.Civ.App.-Amarillo, 1949, writ ref'd).

Because the evidence does not support the amount of the judgment rendered, the case is reversed and remanded unless within ten days from the date of the announcement of this opinion, appellee files a remittitur in the amount of $30.55,

plus the proportionate reduction of penalty on the judgment as reformed. If it does so within such time, the judgment of the trial court will be affirmed with the judgment reduced as required in this paragraph.